**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

MARK LIPSTEIN,

                       Plaintiff,

            v.

UNITED HEALTHCARE INSURANCE
COMPANY, *et al.*

                       Defendants.

---

:
: Civil Case No. 11-1185 (FSH) (PS)
:
: **OPINION & ORDER**
:
: November 22, 2011
:
:
:
:

**HOCHBERG, District Judge:**

## I.      INTRODUCTION

      Plaintiff, Mark Lipstein, brings this action challenging the determination of benefits payments for his health care plan, in which defendants serve as a secondary payor to Medicare. Plaintiff alleges that defendants improperly reduce benefits payments in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"). The Amended Complaint contains three counts. In Counts I and II, plaintiff asserts claims for plan benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). In Count III, plaintiff seeks equitable relief for an alleged breach of fiduciary duty by defendants under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). Defendants seek the dismissal of Count III pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.     ALLEGATIONS

      Plaintiff is a participant in a health care plan administered by defendants. Plaintiff's wife is a beneficiary under the plan and has received various services from a provider who does not

accept Medicare.  Under the terms of plaintiff's health care plan, defendants serve as a secondary

payor to Medicare, with the result that defendants are responsible for paying certain benefits

above and beyond the benefit structure provided by Medicare.

Plaintiff alleges that defendants improperly reduce plan payments in situations where a

plan participant receives services from a provider that does not participate in Medicare, by

estimating the amount that Medicare would have paid if the participant had visited a provider

who participated in Medicare.  Plaintiff alleges that under his health plan, defendants owe in

benefits the difference between what Medicare actually paid and what defendants would pay to a

traditional subscriber where Medicare is not at issue.  Accordingly, plaintiff first contends that

defendants are obligated to pay full benefits when a subscriber visits a provider who does not

accept Medicare.[1]  Plaintiff further alleges that even if defendants are entitled to estimate the

amount that Medicare would have paid when a subscriber visits a provider who does not accept

Medicare, they do so improperly by estimating what Medicare would have paid by using billed

charges instead of the Medicare fee schedule and by overstating the percentage of the allowed

amount under the Medicare fee schedule that Medicare would pay.  Accordingly, plaintiff

contends that his wife was improperly denied benefits to which she was entitled when defendants

---

[1] This theory of liability would effectively allow a beneficiary participating in a secondary coverage plan to elect to convert the plan into a primary coverage plan by choosing a provider who does not participate in Medicare.  Plaintiff does not explain how this theory can be reconciled with plaintiff's affirmative allegations that under the terms of his plan, the coverage provided by defendants is secondary to Medicare.  *See e.g.*, Amended Complaint at ¶¶ 5, 12-14. Because this apparent conflict is not squarely addressed by the briefing of the parties, the Court declines to rule on it at this time, except to note that imposing primary coverage responsibility on a plan intended to provide only secondary coverage would appear to improperly shift substantial unanticipated costs to that plan.  *See McGurl v. Trucking Employees of North Jersey Welfare Fund, Inc.*, 124 F.3d 471, 478 (3d Cir. 1997) (observing that "there would be substantial and adverse fiscal consequences were a court to impose primary coverage on a plan . . . which intended to provide . . . nominal secondary coverage for [a] group of claimants merely because the plan provides primary coverage for certain other claimants").

estimated the amount that Medicare would have paid if she had visited a provider who accepted Medicare.

## III.     STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) ("[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest the required element.  This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.") (internal quotations omitted).

When considering a motion to dismiss under *Iqbal*, the Court must conduct a two-part analysis.  "First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal citations and quotations omitted).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Iqbal*, 129 S. Ct. at 1949 (internal quotations and alterations omitted).

## IV.     DISCUSSION

Defendants seek the dismissal of Count III of the complaint on the theory that it impermissibly duplicates the benefits claims in Counts I and II.  Defendants argue primarily that equitable relief under § 502(a)(3) is not available because plaintiff's alleged injuries can be addressed in a benefits claim under § 502(a)(1)(B).  Defendants specifically argue that § 502(a)(3) is a "catchall" provision that allows a plaintiff to seek "appropriate equitable relief for injuries caused by [ERISA] violations that § 502 does not elsewhere adequately remedy."  *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996).  In *Varity*, the Supreme Court concluded that:

> [§ 502(a)(3)] authorizes appropriate equitable relief.  We should expect that courts, in fashioning appropriate equitable relief, will keep in mind the special nature and purpose of employee benefit plans and will respect the policy choices reflected in the inclusion of certain remedies and the exclusion of others . . . .  Thus, we should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be appropriate.

*Id.* at 515 (quotations and citations omitted).

In Counts I and II, plaintiff seeks unpaid benefits, interest, and clarification of his right to future benefits based on a proper calculation of benefits.  In Count III, plaintiff seeks declaratory and injunctive relief requiring United to recalculate benefits and to pay restitution necessary to make plaintiff whole for the reduced benefits he received.  Defendants argue, citing *Varity*, that to the extent that plaintiff has viable claims, § 502(a)(1)(B) provides an adequate remedy, making § 502(a)(3) unavailable to plaintiff.  Defendants' core argument is that the relief sought by plaintiff in Count III is not appropriate equitable relief because Congress has provided plaintiff with an explicit remedy for the recovery of contractually-owed benefits in § 502(a)(1)(B).

Plaintiff responds that defendants' motion is premature, because the Court has yet to determine whether plaintiff's claimed injuries can be adequately remedied or otherwise

addressed through the benefits claims asserted under § 502(a)(1)(B) in Counts I and II.  Plaintiff

argues that he is entitled to seek non-monetary declaratory relief pursuant to § 502(a)(3),

including relief that would define the parties' rights and obligations and prevent the types of

breaches of fiduciary duty alleged by plaintiff.  *See Smith v. Medical Benefit Adm'rs Group, Inc.*,

639 F.3d 277, 284 (7th Cir. 2011).  Plaintiff further argues that he may seek monetary relief for a

breach of fiduciary duty by defendants under § 502(a)(3).  *See Cigna Corp. v. Amara*, 131 S. Ct.

1866, 1880 (2011) (concluding that "for a loss resulting from a trustee's breach of fiduciary duty,

or to prevent the trustee's unjust enrichment" monetary relief in the form of a surcharge could

fall within the scope of the term "appropriate equitable relief" under ERISA § 502(a)(3)).

Accordingly, plaintiff contends that a proper determination of whether he is entitled to relief "for

an improper denial of benefits under ERISA § 502(a)(1)(B) or for breach of fiduciary duty under

ERISA § 502(a)(3), is a matter to be resolved after discovery."

There is a split among circuits and within this district regarding the effect of *Varity* on a

plaintiff's ability to simultaneously pursue claims for benefits under § 502(a)(1)(B) and for

breach of fiduciary duty under § 502(a)(3).  *Compare e.g.*, *Zebrowski v. Evonik Degussa Corp.*

*Admin. Comm.*, 2011 U.S. Dist. LEXIS 18596, at *11-13 (E.D. Pa. Feb. 24, 2011) ("[A]t this

early stage of the litigation, a complaint in an ERISA action may contain alternative claims under

§§ 502(a)(1)(B) and 502(a)(3) . . . . Before discovery, plaintiffs should not be forced to choose

between their claims for benefits and their claims for equitable relief.") and *DeVito v. Aetna,*

*Inc.*, 536 F. Supp. 2d 523, 533-34 (D.N.J. 2008); *with Stallings v. IBM Corp.*, 2009 U.S. Dist.

LEXIS 81963, at *28-29 (D.N.J. Sept. 8, 2009) and *Chang v. Life Ins. Co. of N. Am.*, 2008 U.S.

Dist. LEXIS 46815, at *7-11 (D.N.J. June 17, 2008).

The Court is persuaded by the reasoning of those courts that have found that *Varity* does not establish a bright line rule precluding the assertion of alternative claims under §§ 502(a)(1)(B) and 502(a)(3) at the motion to dismiss stage.  However, the Court will not permit a § 502(a)(3) claim to duplicate the relief theories of § 502(a)(1)(B) at the appropriate stage of this litigation.  *See e.g.*, *Zebowski*, 2011 U.S. Dist. LEXIS 18596, at *11, *13 ("[A]t this early stage of the litigation, a complaint in an ERISA action may contain alternative claims under §§ 502(a)(1)(B) and 502(a)(3) . . . Before discovery, plaintiffs should not be forced to choose between their claims for benefits and their claims for equitable relief."); *DeVito*, 536 F. Supp. 2d at 533-34 ("The Court is persuaded by the reasoning of those courts that have found that *Varity* does not establish a bright-line rule at the motion to dismiss stage of the case."); *Parente v. Bell Atlantic-Pa.*, 2000 U.S. Dist. LEXIS 4851, at *11 (E.D. Pa. April 18, 2000) ("Instead of a bright-line rule, *Varity* requires an inquiry into whether Congress provided adequate relief for a beneficiary's injury.") (quotations omitted).

## V.   ORDER

For the foregoing reasons, it is on this 22nd day of November, 2011,

**ORDERED** that defendants' motion to dismiss Count III of plaintiff's first amended complaint is **DENIED** as premature at this time.  Defendants may renew their argument that Count III impermissibly duplicates the benefits claims contained in Counts I and II in a summary judgment motion after the completion of discovery.

/s/ Faith S. Hochberg_____
Hon. Faith S. Hochberg, U.S.D.J.