IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MARK LIPSTEIN and ANITA LIPSTEIN, on their own and on behalf of all others similarly situated, | : : : : : | HON. JEROME B. SIMANDLE  Civil No. 11-1185 (JBS/JS) |
| Plaintiffs, | : : | **OPINION** |
| v. | : : | |
| UNITEDHEALTH GROUP, et al., | : : | |
| Defendants. | : : | |

APPEARANCES:

John W. Leardi, Esq.
Paul D. Werner, Esq.
Vincent N. Buttaci, Esq.
BUTTACI & LEARDI, LLC
103 Carnegie Center, Suite 101
Princeton, NJ 08540
  - and -
James E. Cecchi, Esq.
Lindsey H. Taylor, Esq.
CARELLA BYRNE CECCHI OLSTEIN BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068
 - and -
Robert J. Axelrod, Esq.
D. Brian Hufford, Esq.
Anthony F. Maul, Esq.
POMERANTZ GROSSMAN HUFFORD DAHLSTROM & GROSS LLP
600 Third Avenue
New York, NY 10016
     Attorneys for Plaintiffs

Thomas R. Curtin, Esq.
George C. Jones, Esq.
GRAHAM CURTIN, PA
4 Headquarters Plaza
P.O. Box 1991
Morristown, NJ 07962
  - and -

Brian D. Boyle, Esq.
Ramesh P. Nagarajan, Esq.
O'MELVENY & MYERS, LLP
1625 Eye Street, NW
Washington, D.C. 20006
     Attorneys for Defendants

**SIMANDLE, Chief Judge:**

**I. INTRODUCTION**

Plaintiffs Mark and Anita Lipstein bring this putative class
action against Defendants UnitedHealthcare Services, Inc., and
United Healthcare Insurance Co. (collectively, "Defendants" or
"United") for violating the Employee Retirement Income Security
Act, 29 U.S.C. § 1001, et seq. ("ERISA").[1] Plaintiffs claim that
Defendants, the claims administrator for thousands of health
insurance plans, including the Bristol-Myers Squibb Co. health
care plan ("BMS Plan" or "the Plan"), failed to follow the clear
language of the plans when determining secondary insurance
coverage payments to insureds who were (1) enrolled in or
eligible for Medicare and (2) who received medical treatment from
providers who had opted out of Medicare or who received treatment
from Medicare providers and did not submit a claim to Medicare.
Specifically, Plaintiffs allege that United's method for
estimating what Medicare would have paid for services in those
circumstances -- a estimation policy United employs in a uniform

_____

[1] The named Defendant in the caption of this case, United
Healthcare Group, was terminated from this action on May 26,
2011. United plans are governed by ERISA. (Am. Compl. [Docket
Item 41] ¶ 3.)

fashion across all plans that it administers -- resulted in underpayment for the vast majority of insureds. The secondary health insurer (either United itself or the plans which United serves in an administrative capacity) ultimately pays the difference between what it would pay as a primary insurer and what it estimates that Medicare, the actual primary insurer, would have paid if the insured received treatment from a Medicare provider and submitted a claim. In short, in this action Plaintiffs challenge United's estimation methodology.

An example, drawn from lead Plaintiffs Mark and Anita Lipstein, might clarify the dispute. Mark Lipstein is a retiree insured under the BMS Plan, which also provides coverage for his wife. Mrs. Lipstein, who was enrolled in Medicare, received treatment from a therapist who had opted out of Medicare and who billed Mrs. Lipstein $130 for each session. Medicare, of course, paid nothing. Mrs. Lipstein's secondary health insurance plan, the BMS Plan, instructs United, as the secondary insurer's claims administrator, to reduce the amount of secondary coverage the BMS Plan owed to Mrs. Lipstein by estimating what Medicare would have paid, if she had received treatment from a therapist who participated in Medicare. To calculate secondary coverage, United started with the actual billed amount, $130, as the "allowable expense." Because Medicare, at the time, covered only 55 percent of the allowable expense for mental health services, United

3

determined that Medicare would have paid 55 percent of $130, or $71.50. Next, because the BMS Plan would have paid 80 percent of the allowable expense as the primary insurer, United determined that the BMS Plan would have paid 80 percent of $130, or $104. Therefore, United determined that the BMS Plan was responsible for the difference of $104 and $71.50, or $32.50.

Plaintiffs contend that what United should have done when it coordinated benefits between Medicare and the BMS Plan was to use the published Medicare fee schedule to determine the allowable expense for the Medicare estimation. Plaintiffs assert that Medicare's fee schedule lists the allowable expense for a therapy session at $86.58, meaning that Medicare would have covered 55 percent of that amount, or $47.62. Plaintiffs conclude that if the BMS Plan would have paid $104 as the primary insurer (80 percent of the billed charge of $130), then the Plan owed Mrs. Lipstein the difference of $130 and $47.62, or $56.38. Plaintiffs therefore conclude that United's estimation policy shorted Mrs. Lipstein $23.92 for each session (i.e., the difference between $56.38 and $32.50).

In table form:

| United's Estimation Method | | |
|---|---|---|
| What Medicare would pay | Allowable expense | **Billed charge**[*] ($130) |
| | Percentage covered | 55% |
| | Estimated Medicare payment | **$71.50** (55% of $130) |
| What the secondary plan would pay as primary | Allowable expense | Billed charge, if less than R&C calculation* ($130) |
| | Percentage covered | 80% |
| | Estimated payment as primary | **$104** (80% of $130) |
| **Secondary payment owed** | **$32.50** ($104 − $71.50 = $32.50) | |

| Plaintiff's Proposed Estimation Method | | |
|---|---|---|
| What Medicare would pay | Allowable expense | **Medicare fee schedule** ($86.58) |
| | Percentage covered | 55% |
| | Estimated Medicare payment | **$47.62** (55% of $86.58) |
| What the secondary plan would pay as primary | Allowable expense | Billed charge, if less than R&C calculation* |
| | Percentage covered | 80% |
| | Estimated payment as primary | **$104** (80% of $130) |
| **Secondary payment owed** | **$56.38** ($104 − $47.62 = $56.42) | |

---

[*] United normally determines the allowable expense by using a "reasonable and customary calculation for out-of-network providers" ("R&C calculation"). In the Lipstein case, the billed charge was less than the R&C calculation, so United used the billed charge as the allowable expense.

In other words, Plaintiffs contend that their BMS Plan clearly directs United to use the Medicare fee schedule to determine the allowable expense for a particular medical service and a larger allowable expense (usually the "reasonable and customary" charge for those services) when calculating what the secondary plan owes the insured. Instead, United used the actual amount billed by the provider as the allowed expense for both coordination-of-benefits calculations, resulting in an inflated estimation of Medicare's hypothetical payment, which in turn improperly reduced the amount paid by the secondary insurer to the Plaintiffs and class members. Plaintiffs seek injunctive and declaratory relief ordering United to recalculate benefits according to Plaintiffs' proposed estimating method.

This matter is before the Court on Plaintiffs' motion to certify a class under Rule 23(b)(2) or Rule 23(b)(3) [Docket Item 65] and Defendant's motion for summary judgment [Docket Item 93]. The key question for the class certification motion is whether plaintiffs meet the commonality and ascertainability requirements of Rule 23(a) and the requirements of Rule 23(b)(2) or the predominance requirement of Rule 23(b)(3). As discussed below, because the plans vary in the amount of discretion they give United and in the clarity with which they set the estimation calculation, different class members could have claims analyzed under different standards of review (de novo or abuse of

6

discretion). Resolving the standard or review question alone could be outcome determinative, and requires an individual inquiry into each plan. The substantive dictates of the plans vary as well, likely leading to different results for different class members. Thus, as further explained below, class certification is inappropriate and the motion to certify will be denied.

The motion for summary judgment turns on whether the language in the 2007 summary plan description ("SPD") of the BMS Plan is ambiguous as to the method that must be used to estimate what Medicare would have paid for services obtained from providers who opted out of Medicare. Here, the Plan is silent on how to "estimate" what Medicare would have paid, and the Plan is ambiguous. United's interpretation of the plan -- that what Medicare would have paid refers, in effect, to the <u>percentage</u> of the allowed expense ordinarily paid by Medicare and not a specific dollar amount -- is not an arbitrary and capricious reading of the SPD, and therefore summary judgment should be entered in favor of Defendants.

## II. Background

### A. Facts

### i. The BMS Plan

The BMS Plan is a self-funded medical benefits plan, meaning benefits are paid by the Plan itself. (Statement of Material Fact

7

("SMF") [Docket Item 93-3] ¶ 1). The Plan provides for "a coordination of benefits" when insureds under the Plan are simultaneously covered by a separate insurance plan, for instance, Medicare. (2007 Summary Plan Description ["2007 SPD"], Decl. of Christopher Catalano Ex. 2 [Docket Item 93-12] at 31.) The 2007 summary plan description ("SPD") of the BMS Plan explains that it

> coordinates benefits paid with those provided by other group plans, so that the total amount reimbursed to you is not greater than the total benefit that would have been paid under the [BMS] Plan if it were the only plan providing coverage. . . . Coordinating benefits requires determining which plan will be primary. Eligible expenses are paid first through the primary plan. If the [BMS] Plan is secondary, it will then pay the difference between what was paid and what the [BMS] Plan would have paid if it were the only plan providing coverage.

(Id. at 31.) It is undisputed that where a participant or beneficiary of the BMS Plan is eligible for Medicare, Medicare is the primary plan and the BMS Plan provides secondary coverage.[2] (SMF ¶ 12.)

The Plan's discussion of estimating Medicare is meager. The SPD states only: "***Note that if you are eligible for Medicare and Medicare is the primary payor, an estimate of Medicare payments will be made in such cases where no filing with Medicare is made.***" (2007 SPD at 32) (emphasis in original). The Plan then

---

[2] There is a limited exception to this rule not relevant here. (See id. at 32.)

inserts "An Example of Coordination of Benefits":

> If the [BMS] Plan is secondary, it will pay a benefit that brings coverage up to the amount that the [BMS] Plan would pay if it were the only plan. For example, if the primary plan has already paid $60 toward a covered expense and the [BMS] Plan benefit is $80, the [BMS] Plan would pay $20 as the secondary plan, bringing you up to the full $80 benefit. If the other plan paid $80, the [BMS] Plan would pay nothing.

(2007 SPD at 32.) The Plan does not provide an illustration of coordination of benefits when the primary payor does <u>not</u> make a payment, nor does the Plan illustrate how it estimates Medicare payments. There is no further discussion of estimating Medicare payments in the BMS Plan.[3]

In sum, where, as here, an insured under the Plan is also enrolled in Medicare and receives treatment from a provider who does not accept Medicare, the BMS Plan will estimate what Medicare would have paid to the insured (had the provider accepted Medicare) and pay to the insured the difference between that estimate and the amount the insured would receive if the BMS Plan were the primary insurer for those services.

### ii. The Lipsteins

The facts of this case are undisputed by the parties. In 2010, Plaintiffs Mark and Anita Lipstein were covered by the BMS Plan. (SMF ¶ 12.) Mrs. Lipstein was eligible for and enrolled in Medicare Part B. (<u>Id.</u> ¶ 22.) Mrs. Lipstein received five

---

[3] Plaintiffs do not challenge the sufficiency of detail and/or notice of the SPD.

psychotherapy sessions in 2010 from a medical provider who did not accept Medicare Part B. (Id. ¶ 24.) For each session, the provider billed $130, and the Lipsteins submitted claims to United, which is the Claims Administrator for the BMS Plan. (Id.; 2007 SPD at 73.) Medicare made no payment because the provider did not accept Medicare. (SMF ¶ 25.)

As previously discussed, United's methodology determined that BMS Plan owed $32.50 to Mrs. Lipstein for each session. In reality, BMS actually paid the Lipsteins $46.80 for each session, a self-professed "overpayment" that United permitted the Lipsteins to keep. (Id. ¶ 30.) Plaintiffs contend they should have been paid $56.38 for each session. The Lipsteins appealed this determination unsuccessfully. (Id. ¶¶ 32-33.)

**B. Procedural history**

Plaintiffs' Amended Complaint contains three counts.[4] Counts I ("the 'Violation of the Actual Payment Requirement Claim'") and II ("the 'Improper Estimation Claim'") both alleges that United's estimation policy violates 29 U.S.C. § 1132(a)(1)(B) because it violates the clear terms of the plans.[5] (Am. Compl. [Docket Item

---

[4] The Court has jurisdiction over this putative class action under 29 U.S.C. § 1132(e)-(f) (granting federal district courts exclusive jurisdiction over ERISA actions, except for claims brought under subsection (a)(1)(B), over which federal and state courts have concurrent jurisdiction).

[5] Section 1132(a)(1)(B), which codifies ERISA § 502(a)(1)(B), provides: "A civil action may be brought -- (1) by a participant or beneficiary . . . (B) to recover benefits due to

41] ¶¶ 58-74.) Count III ("Claim for Equitable Relief under
ERISA"), brought under 29 U.S.C. § 1132(a)(3),[6] alleges that
Defendants breached their fiduciary duties to the proposed class.
(Am. Compl. ¶¶ 75-79.) Plaintiffs seek declaratory relief ("to
prevent United's continuing actions detailed herein"), injunctive
relief ("[e]njoining United from continuing to use self-serving
Medicare payment estimates"), and an order "to recalculate and
issue unpaid benefits to members that were unpaid or underpaid as
a result of United's actions, as detailed herein, with
interest[.]" (Id. at 19-20 ¶¶ B-D.) Plaintiff also seek an
"disbursements and expenses . . . ." (Id. at 20 ¶ E.)

    Plaintiffs propose the following class definition:

> **The Class:** All United Plan subscribers who, from six
> years prior to the filing date of this action to its
> final termination ("Class Period"), sought health
> benefits under healthcare plans governed by ERISA and
> insured and/or administered by United, where the United
> Plan was secondary to Medicare and United utilized an
> estimate of Medicare payments to determine the benefit
> level payable to such subscribers, and where such
> subscribers received a reduced benefit from United as a

---

him under the terms of his plan, to enforce his rights under the
terms of the plan, or to clarify his rights to future benefits
under the terms of the plan[.]"

    [6] Section 1132(a)(3), which codifies ERISA § 502(a)(3),
provides: "A civil action may be brought . . . (3) by a
participant, beneficiary, or fiduciary (A) to enjoin any act or
practice which violates any provision of this subchapter or the
terms of the plan, or (B) to obtain other appropriate equitable
relief (i) to redress such violations or (ii) to enforce any
provisions of this subchapter or the terms of the plan[.]"

result.[7]

(Class Cert. Mot. Br. [Docket Item 68] at 5.) Plaintiffs seek class certification under Rule 23(b)(2) and (b)(3). (Id. at 16, 31.) Defendants oppose class certification and filed this motion for summary judgment. [Docket Item 93-1.] This action was originally assigned to this Court's Newark vicinage. On August 2, 2013, the matter was reallocated from Newark to Camden, and reassigned to the undersigned.[8] [Docket Item 149.] The Court heard oral argument on the both motions on September 17, 2013.[9]

## III. Class Certification motion

### A. Rule 23(a)

Fed. R. Civ. P. 23(a) enumerates four threshold requirements for class certification known as numerosity, commonality, typicality and adequacy of representation.[10] Rodriguez v. Nat'l

---

[7] Plaintiffs also originally proposed a subclass (Class Cert. Mot. Br. at 5), but in later filings and at oral argument Plaintiffs made clear that they are no longer challenging "United's right to use estimating," only the method of estimating, and Plaintiffs no longer seek "to certify the subclass described in his initial motion." (Class Cert. Reply at 19 n.9.)

[8] When the case was reassigned, the Court requested supplemental briefing on the class certification motion, in light of recent Supreme Court and Third Circuit precedent.

[9] Also pending at this time are Defendants' appeal a Magistrate Judge's decision [Docket Item 143] and Plaintiff Lipstein's motion to preclude opinions and testimony by Defendants' proposed expert witnesses [Docket Item 117].

[10] Rule 23(a) provides:

City Bank, --- F.3d ---, No. 11-8079, 2013 WL 4046385, at *4 (3d
Cir. Aug. 12, 2013); Comcast Corp. v. Behrend, 133 S. Ct. 1426,
1432 (2013) (stating that a party seeking class certification
must prove that "there are in fact sufficiently numerous parties,
common questions of law or fact, typicality of claims or
defenses, and adequacy of representation") (citing Wal-Mart
Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551-52 (2011)) (internal
quotation marks omitted). Plaintiff must show by a preponderance
of the evidence that the Rule 23(a) requirements have been met.
In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 320 (3d
Cir. 2008).

### i. Commonality

The Court begins its analysis with the most hotly contested
requirement of the four, commonality. In brief, Plaintiffs
contend that the "clear common issue which predominates over
individual questions" is "whether, in determining benefits as a

---

One or more members of a class may sue or be sued as
representative parties on behalf of all members only
if:
    (1) the class is so numerous that joinder of all
members is impracticable;
    (2) there are questions of law or fact common to the
class;
    (3) the claims or defenses of the representative
parties are typical of the claims or defenses of the
class; and
    (4) the representative parties will fairly and
adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

secondary insurer to Medicare, it is proper under ERISA for
United to use billed charges as the allowed amount rather than
the Medicare fee schedule that the government actually uses in
paying Medicare benefits." (Class Cert. Mot. Br. at 19.) In
opposition, Defendants argue that whether that estimation policy
is permissible under ERISA depends on whether the estimation is
permissible under each plan, and the latter determination
requires an individualized inquiry into the specific plan
language, defeating the possibility of class resolution to this
case. (Def. Opp'n at 26.)

Plaintiffs contend that "only one question of law or fact in
common is necessary to satisfy the commonality requirement . . .
." (Class Cert. Mot. Br. at 18, quoting In re Schering Plough
Corp. ERISA Litig., 589 F.3d 585, 597 n.10 (3d Cir. 2009)).
Because all of the class members were subjected to United's
uniform benefits determination, Plaintiffs conclude that the
commonality requirement is satisfied. (Id. at 21.) Moreover,
Plaintiffs reject the argument that the existence of different
plans precludes a finding of commonality. (Id. at 22, citing
Fallick v. Nationwide Mut. Ins. Co., 162 F.3d 410 (6th Cir.
1998)[11] and Sutton v. Med. Serv. Ass'n, No. 92-4787, 1993 WL

---

[11] The citation to Fallick, as Defendants note, is of limited
help to Plaintiffs. In Fallick, the Sixth Circuit reversed the
district court ruling, which had held that the plaintiff did not
have Article III standing to represent putative class members who
participated in different ERISA-governed plans. Fallick, 162 F.3d

289879 (E.D. Pa. July 27, 1993).[12]) Plaintiffs state: "In
assessing Plaintiffs' breach of contract claims . . . , the Court
need consider only the contract language governing United's
obligations regarding making benefit determinations when it is
secondary to Medicare, and whether United's actions breached
those obligations." (Class Cert. Mot. Br. at 25.) At the same
time, Plaintiffs appear to argue that the variations in plan
language are irrelevant because United applied a uniform policy
without regard to the plan language. "Because United interpreted
its contractual obligations in administering all of its plans and
did not differentiate its action based on the language of the
individual plans for determining benefits, adjudication of ERISA
claims for unpaid benefits is a common issue that predominates in

---

at 424. Neither court addressed the issue of commonality. The
Sixth Circuit observed that the district court had confused the
issue of standing with the requirements of Rule 23, and remanded
for a "careful Rule 23 analysis." Id. at 422, 424.

[12] Sutton concerned a motion to compel joinder of a necessary
party, which is not at issue here. Sutton, 1993 WL 289879, at *1.
The class certified in Sutton included members of ERISA-governed
plans who were denied service because the claimant filed the
claim without using a specific form or because the claimant sent
the claim to the wrong address. Id. at *2. Furthermore, the
landscape for class certification has changed considerably since
1993.
    In addition, Plaintiffs point to Giles v. AT&T, No. 09-293,
2012 WL 398990 (N.D.N.Y. Feb. 7, 2012), but that case does not
appear to be a class action, so its relevance to this analysis is
ponderous. In fact, the district court in Giles faulted the
plaintiff for not opting out a related class-action settlement,
and denied his motion for summary judgment as moot. Giles, 2012
WL 398990, at *19.

this action." (Id.)

Plaintiffs further reject the notion that commonality is "defeated by the need to calculate damages for Class Members based on United's improperly reduced benefits," because "United can be ordered to recalculate benefits using proper procedures as determined by the Court." (Class Cert. Mot. Br. at 24.) Plaintiffs cite Selby v. Principal Mut. Life. Ins. Co., 197 F.R.D. 48, 59 (S.D.N.Y. 2000), as precedent that class action is appropriate where an injunction could issue requiring the reprocessing of claims, resulting in proper payment without further court action.[13] (Class Cert. Mot. Br. at 24.) Plaintiffs

---

[13] In Selby, the court concluded that a finding of liability under ERISA "will trigger an injunction requiring the reprocessing of all the class members' claims, and would result in the payment of many improperly denied claims without further court action." 197 F.R.D. at 59. The plaintiffs had challenged the defendant insurance company's "on-line" review process because the claims workers considered only the first listed diagnosis on a claim, even if a doctors had listed several diagnoses. Id. at 54-55.

Defendants counter that "[a] plaintiff cannot transform a claim for damages into an equitable action by asking for an injunction that orders the payment of money." (Def. Opp'n at 45, quoting Jaffee v. United States, 592 F.2d 712, 715 (3d Cir. 1979); see also Silva v. Easter, 403 F. App'x 695, 699 (3d Cir. 2010) (quoting Jaffee). In Jaffee, the plaintiff sought "an injunction ordering either the provision of medical services by the Government or payment for the medical services." Jaffee, 592 F.2d at 715. The Third Circuit stated that the "request for prompt medical examinations and all medicare care and necessary treatment, in fact, is a claim for money damages." Id. The court noted that the "payment of money would fully satisfy Jaffee's 'equitable' claim for medical care." Id.

The Third Circuit recently stated in Edmonson v. Lincoln Nat'l Life Ins. Co., No. 12-1581, 2013 WL 4007553, at *21 (3d Cir. Aug. 7, 2013), that "[a]lmost invariably . . . suits seeking

16

suggest that another common issue that predominates in this action is whether United breached a fiduciary duty. (Id. at 26.)

In their supplemental briefing, Plaintiffs argue that the Third Circuit's decision, Marcus v. BMW of N. Am., LLC, 687 F.3d 583 (3d Cir. 2012), supports a finding of commonality. (Pl. Supp. Br. at 4.) In Marcus, the Third Circuit observed that the plaintiff sought to offer evidence that certain "run-flat tires," which are designed to work even if flat, were defective, whether the defendants had a duty to disclose the defects, and whether the defendants failed to disclose the defects. Marcus, 687 F.3d at 597. The Third Circuit stated that these issues of fact and law were common to all class members and the district court did not abuse its discretion in finding that the commonality requirement was satisfied. Id. Plaintiffs contend that this case is analogous because "the gravamen of Plaintiff's claims is that United violates the express terms of each of the class members' health plans by using billed charges as a proxy for estimated

---

(whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' . . . ." (quoting Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 210 (2002)). The court determined that because the plaintiff sought "nothing more than compensation for an alleged loss allegedly caused by an alleged breach of [the defendant's] fiduciary duty," he was seeking legal (monetary) relief, not equitable relief. Edmonson, 2013 WL 4007553, at *21. Here, by contrast, Plaintiffs seek not only withheld benefits but the alteration of United's method of calculating benefits. This injunctive element distinguishes the present case from Jaffee and its progeny. This can properly be considered injunctive relief.

Medicare payments . . . ." (Pl. Supp. Br. at 4.)

　　Defendants respond that commonality is lacking. Pointing to
Wal-Mart, Defendants argue that "[w]hat matters to class
certification . . . is not the raising of common 'questions' --
even in droves -- but, rather the capacity of a classwide
proceeding to generate common answers apt to drive the resolution
of the litigation." (Def. Opp'n at 25, quoting Wal-Mart, 131 S.
Ct. at 2551) (emphasis in Wal-Mart). Because the Amended
Complaint alleges breach of contract claims, and each plan is
governed by its own language and summary plan description, "the
purportedly common questions [Lipstein] presents in fact require
many plan-specific inquiries that will turn on each plan's
distinctive language." (Def. Opp'n at 26.) Namely, the Court must
consider whether the various plans (1) give United discretion to
interpret the plan's terms, affecting the standard of review that
Court must apply to the administrator's determination ("de novo"
versus "abuse of discretion"), and (2) reasonably permit the use
of a billed charge as the allowable expense for purposes of
estimating Medicare's payment. (Id. at 27-28, 30-31.) Defendants
have prepared a 99-page chart that compares variations in plan
language and which serves to illustrate the individualized
inquiry that would be required to resolve the class members'
claims. (See Reed Decl., Ex. A ("Chart") [Docket Item 74-10].)

　　On the issue of discretion given to United to interpret a

18

plan's terms, Defendants suggest that some Plans explicitly grant discretion to United. (Def. Opp'n at 28, citing SPD No. 37 (Chart at 81-82), and SPD No. 47 (Chart at 95-96).) The 2010 SPD of the BMS Plan is among these plans: "The Plan Administrator has delegated to the Claims Administrator the exclusive right to interpret and administer the provisions of the Plan." (Catalano Decl. Ex. 2 [Docket Item 74-13] at 78.) Defendants argue that other plans confer discretion on non-United parties. (Def. Opp'n at 28.) See SPD No. 27 (Chart at 65-66) (granting "sole and absolute discretion" to the Plan Administrator, presumably not United); SPD No. 36 (Chart at 80-81) (granting discretionary authority to interpret the plan to the "Trustees or Plan Fiduciary"). Still other plans permit the administrator to delegate discretionary authority "without making clear in the document itself whether it has done so . . . ." (Def. Opp'n at 29.) See SPD No. 45A (Chart at 93) (granting discretionary authority to the "plan administrator" and stating that the administrator may delegate its duties to other personnel); SPD No. 22 (Chart at 55-57) (granting to a "Named Fiduciary" the authority to designate others to carry out responsibilities of the fiduciary). The distinctions are significant, because if a plan gives the claims administrator discretionary authority to determine eligibility, courts apply an abuse of discretion, or arbitrary and capricious, standard of review, whereas if the plan

19

does not confer such discretion, courts apply de novo review. See Viera v. Life Ins. Co. of N. Am., 642 F.3d 407, 413 (3d Cir. 2011) ("'a denial of benefits challenged under [ERISA] is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan,'" in which case the decisions are reviewed "under an abuse-of-discretion (or arbitrary and capricious) standard") (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)). Defendants contend that a fact-specific inquiry will be required to determine the threshold question of which standard of review to apply. (Def. Opp'n at 29.)

The Court agrees with Defendants. It is quite likely that the standard of review will be determinative in this case. As the Court will explain in its discussion of the summary judgment motion, infra Part IV, United's interpretation is not necessarily the most natural or logical reading of the plan documents, and the Court may well interpret the plans differently from United if the Court employs de novo review. However, where plans are ambiguous or silent on how to estimate Medicare payments, United's policy is not necessarily arbitrary and capricious, and likely would be upheld under a more deferential standard of review with at least some plans. Determining what discretion United enjoys under each plan will require a separate

20

determination, based on each individual plan -- potentially numbering in the thousands -- and, in some cases, extrinsic evidence. Therefore, no single common answer could possibly answer the class members' claims.

In addition, Defendants argue that the plans differ in material ways concerning the estimation policy itself, further precluding a finding of commonality. (Id. at 31.) Defendants assert that some plans, including the 2007 BMS SPD, do not specify what United should use for the allowed expenses in its estimation calculation. (Id., citing SPD Nos. 5, 18 & 47 (Chart at 15-18, 49-51, 95-98).) Other plans address which allowed amount should control, and direct the administrator to use the primary plan's (in this case, Medicare's) allowable expense. (Id. at 31-32); see Sample Company Choice Plus Plan (Catalano Decl. Ex. 5 [Docket Item 74-16]) at 80 ("If the provider does not accept Medicare, the Medicare limiting charge . . . will be the allowable expense"); SPD No. 45A (Chart at 93-94) (same); SPD No. 17 (Chart at 44-45) ("your benefit is calculated as if the [sponsor] plan were primary based on the Medicare approved rate of coverage, if applicable"). Other plans establish contingencies for when the primary plan's rate will control. See SPD No. 1 (Chart at 5-10) ("[i]f a person is covered by one Coverage Plan that calculates its benefits . . . on the basis of usual and customary fees and another Coverage Plan that provides its

benefits on the basis of negotiated fees, the Primary Coverage
Plan's payment arrangements shall be the Allowable Expense for
all Coverage Plans"); SPD No. 4 (Chart at 14) (same). Other plans
do not state a formula, but provide examples of calculations
which rely on the primary plan's allowable expense. (Def. Opp'n
at 32-33.) At least one plan provides that if the primary and the
secondary plans "do not have a contracted rate, the allowable
expense will be the greater of the two plans' reasonable and
customary charges." SPD No. 12 (Chart at 34). Defendants suggest
that other plans can be read to provide that use of an opt-out
provider is a violation, "vitiat[ing] secondary plan coverage for
anything but the portion of the Medicare allowed expense that
would have been the patient's financial responsibility. Needless
to say, United's methodology produces greater secondary plan
benefits." (Def. Opp'n at 33.)

In addition, the proper interpretation of BMS Plan at issue
depends on interpretations of either the 2007 or 2010 SPDs,
whichever is controlling of each claim.[14] (Id. at 33-34.)
Defendants highlight potentially contradictory language within

_____

[14] Here, the parties dispute whether the Lipsteins ever
received the 2010 SPD, and thus, for the purposes of the summary
judgment motion, the Court must assume that the Lipsteins did
not, as all parties agree the 2007 SPD is more favorable to the
Lipsteins. The point, for class certification, is that to
determine which SPD is controlling for each class member, the
Court may need to conduct an inquiry into when or whether the
class member received the purportedly operative SPD.

the 2010 SPD, which must be parsed to determine what allowed expense must be used in the Medicare estimation. (Id.) Defendants conclude that "the variations in plan language at issue do not allow 'common answers' on the same body of proof. It follows that the class motion fails Rule 23(a)(2)." (Id. at 34.)

Plaintiffs reply that the variations in language "are immaterial and irrelevant" because none of the plans "can reasonably be interpreted to permit application of United's uniform estimating methodology. Not one provides that United can estimate Medicare benefits the way it has." (Pl. Reply at 8.) Plaintiffs contend that the differences are "irrelevant because . . . even if there were variations, United ignored them in performing its uniform policy of determining benefits . . . ." (Id.) Plaintiff groups the sample SPDs into four groups: the BMS-Style Plans, the NAIC Plans, the "Limiting Charge" Plans, and Miscellaneous Plans. (Id. at 9-17.) Essentially, Plaintiffs argue that United's "uniform policy" is not "a reasonable interpretation of its plan language" because "[t]here is no reasonable basis for arguing that . . . the allowed amounts for both the United Plans and Medicare are the billed charges." (Id. at 11-12.) Plaintiffs argue that whether United may estimate what Medicare would have paid by applying United's allowed amount "is susceptible to a common answer: 'yes' or 'no.'" (Id. at 22.)

Plaintiffs are correct that the question they seek to

resolve could have a simple yes or no answer, but they ignore the reality that in order to make that determination the Court would need to make at least as many individual determinations as there are plans at issue across the broad class, after analyzing each plan's language and potentially other evidence relevant to each claim. Plaintiffs bring "breach of contract claims," which, by Plaintiffs' admission, require the Court to consider "the contract language governing United's obligations regarding making benefit determinations when it is secondary to Medicare, and whether United's actions breached those obligations." (Class Cert. Mot. Br. at 25.)

Contrary to Plaintiffs' argument, the Court cannot ignore the specific plan language regarding coordination of benefits with Medicare, because Defendants' policy is only impermissible if it conflicts with the language of the particular plan or if it is otherwise arbitrary and capricious. The question is not whether the plans expressly require Defendants' policy, but whether, in each circumstance, the policy is a permissible interpretation of each plan. Likewise, the question is not whether United's policy is improper; rather, the question is whether United's policy is improper according to the terms of each plan giving rise to a claim. These inquiries cannot be completed without the Court's careful attention to the plan language and likely would not lead to the same answer for each

24

claimant. Plaintiffs' deceptively simple question will require individual determinations based on different plans at different points in time where United enjoyed different amounts of discretion and could yield a kaleidoscope of "yeses" and "nos" across the class.

Some plans quoted by Defendants appear to indicate that Medicare's allowed expense (as determined by the Medicare fee schedule) should be used for estimating purposes, and even under a deferential arbitrary and capricious standard, United might be liable for not following its own plan language. See Sample Company Choice Plus Plan (Catalano Decl. Ex. 5) at 80 ("If the provider does not accept Medicare, the Medicare limiting charge . . . will be the allowable expense"); SPD No. 45A (Chart at 93-94) (same); SPD No. 17 (Chart at 44-45) ("your benefit is calculated as if the [sponsor] plan were primary based on the Medicare approved rate of coverage, if applicable"). Others plans, however, including the BMS Plan governing Mrs. Lipstein's claims, simply are not explicit about what allowed expense must be used when estimating Medicare's payment, and, in the face of ambiguity and under an arbitrary and capricious standard of review, Defendants' policy likely could be found to be rationally related to a legitimate plan purpose and not contrary to the express language of the plan. See infra, Part IV (discussing the summary judgment motion).

25

At the same time, to say that Defendants's estimation policy reflects a permissible interpretation of some of the plans is not to say that the Court would read the policies the same way upon de novo review. Thus, whether Defendants have discretion to interpret the plan, and whether the plan terms are ambiguous are potentially outcome determinative of each putative class member's claim, and cannot be resolved with a common answer.

Plaintiffs also argue that

> [t]he concerns raised by United -- if they are valid at all -- only become relevant <u>if</u> the Court first finds that United's determination was not 'arbitrary and capricious' and must then make a <u>de novo</u> review for those plans where the standard applies because the plans did not give United discretion. Moreover, regulations in at least 19 states preclude an insurer from relying on a discretion provision in a healthcare plan to avoid <u>de novo</u> review of the insurer's benefit determinations. Thus, the Court can easily separate out the Plans issued in those states and apply <u>de novo</u> review.

(<u>Id.</u> at 24.) This seems only to cloud the standard of review issue, and underscore the possibility of disparate outcomes for putative class members, even based on identical plan language. If state law would affect claims arising from fully insured plans (as opposed to self-funded plans), perhaps one or more subclasses would need to be certified. While Plaintiffs acknowledge this reality, they have proposed no subclasses for certification.

The Court holds that Plaintiffs fail to establish the Rule 23(a) prerequisite of commonality for these claims, given the variations in the plans. <u>See</u> <u>Wal-Mart</u>, 131 S. Ct. at 2551

(discussing the need for common answers to putative class members' claims); <u>Franco v. Conn. Gen. Life Ins. Co.</u>, 289 F.R.D. 121, 135 (D.N.J. 2013) (denying a motion for class certification because "critical liability questions presented by the ERISA claims depend on plan language" which would require an individualized inquiries and because the plaintiffs lacked proof of substantial similarity or "uniformity among plans as to actual plan language, on which the § 502(a)(1)(B) claims must necessarily be based"). Therefore, the motion for class certification will be denied.[15]

### ii. Class definitions & ascertainability

Defendants also argue that the class certification motion should fail because the class definition cannot be readily ascertained based on objective criteria. Specifically, Defendants object to the definition because the class is defined as including only those subscribers that "received a reduced benefit from United as a result" of the estimation policy. (Def. Opp'n at 23.) Defendants identify two problems with this definition. First, determining which benefits were "reduced" will require individualized inquiries, as there are instances where United's

---

[15] The parties have not suggested that any different considerations arise in examining the commonality of the fiduciary claims in Count III arising under ERISA § 502(a)(3), 29 U.S.C. § 1332(a)(3). No separate briefing or argument has been devoted to the issue of certifying a class for the § 502(a)(3) claims, and the Court does not consider this issue separately from the above discussion.

27

contracted rate is below the Medicare fee schedule rate. (Def. Opp'n at 23.) Second, the class definition "proposes a 'fail-safe' class, viz., one in which 'whether a person qualifies as a member depends on whether the person has a valid claim.'" (Def. Opp'n at 23, quoting Messner v. Northshore Univ. HealthSystem, 669 F.3d 802, 825 (7th Cir. 2012)); see also Yarger v. ING Bank, fsb, 285 F.R.D. 308, 317 (D. Del. 2012) ("defining a class to consist of solely those who have certainly suffered injury is forbidden").

The Court agrees that, as drafted, the class suffers from an ascertainability problem, because determining whether members received a reduced benefit as a result of United's estimation policy requires fact-intensive inquiries that would place a serious administrative burden on the Court. The class under this definition is not "currently and readily ascertainable based on objective criteria," Marcus, 687 F.3d at 592-93, which is an additional reason to deny the motion for class certification.

Plaintiffs suggest in their papers that "the Court may simply eliminate the last phrase of the class definition" such that the class was not limited to those who had received a reduced benefit. (Pl. Reply at 19 n.10.) In such a case, the class would be defined as:

> All United Plan subscribers who, from six years prior
> to the filing date of this action to its final
> termination ("Class Period"), sought health benefits
> under healthcare plans governed by ERISA and insured

28

> and/or administered by United, where the United Plan
> was secondary to Medicare and United utilized an
> estimate of Medicare payments to determine the benefit
> level payable to such subscribers.

But at oral argument Plaintiffs did not stop there, suggesting to limit the class to those insured by plans having "similar" language to the BMS Plan. A "similarity" restriction presents its own problems, because a determination of similarity would not be based on objective criteria, as <u>Marcus</u> and other recent precedents demand, but on subjective degrees of likeness. Determining the degree of similarity likewise would require a textual analysis of each specific plan, making the class not <u>readily</u> ascertainable. Any class definition that turned on the similarity of plan language would suffer from the same ascertainability flaw as the proposed class definition in Plaintiffs' motion.

### B. Rule 23(b)(2) requirements

Even assuming that Plaintiffs meet all of the Rule 23(a) requirements, Plaintiffs fail to satisfy the requirements of either Rule 23(b)(2) or (b)(3).

Rule 23(b)(2) permits class certification if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Claims for individualized relief may not be certified under 23(b)(2), nor

29

may claims for monetary relief that are "not incidental to the injunctive or declaratory relief." Wal-Mart, 131 S. Ct. at 2557.

Here, Plaintiffs "seek declaratory and injunctive relief, including a declaration that United's Medicare estimation policy violates ERISA, and an injunction against use of this policy to make benefit determinations." (Class Cert. Mot. Br. at 31.) According to Plaintiffs, courts "routinely characterize injunctions requiring the payment of monies unlawfully withheld as injunctive, rather than monetary, relief -- particularly in ERISA cases[.]" (Id. at 32, quoting Serio v. Wachovia Secs., LLC, No. 06-4681, 2009 WL 900167, at *5 (D.N.J. Mar. 31, 2009).[16] Plaintiffs also state, citing pre-Wal-Mart cases, that their additional request for "recovery or payment of wrongly withheld healthcare benefits in no way lessens the amenability of their claims to Rule 23(b)(2)." (Id. at 32.)

As Defendants point out, and as the Supreme Court observed in Wal-Mart, that the relief is considered equitable is "true, but it is irrelevant." Wal-Mart, 131 S. Ct. at 2560. In Wal-Mart, the Supreme Court rejected a similar argument that backpay claims were considered equitable because "[t]he Rule does not speak of 'equitable' remedies generally but of injunctions and declaratory judgments." Id. Defendants also correctly argue that Rule

---

[16]  Serio involved members who had all been subject to the same deferred compensation plan. Serio, 2009 WL 900167, at *1.

23(b)(2) "applies only when a single injunction or declaratory judgment would provide relief to each member of the class." Id. at 2557; (Def. Opp'n at 44).

Plaintiffs respond that Defendants misunderstand the relief sought. "Plaintiff asks for injunctive and declaratory relief that would reverse United's Medicare-estimating determination, and a remand with instructions on how to reprocess the claims in compliance with ERISA." (Pl. Reply at 28-29.) Plaintiffs state they are not seeking "an injunction that awards the payment of money." (Id. at 29.)

A question remains whether, post-Wal-Mart, classes such as those in Serio may be certified under subsection (b)(2), however the present case is distinguishable from Serio. Here, the declaratory or injunctive relief itself is not appropriate on a class-wide basis, as the various standards of review and provision formulations could yield different results on the legality of the estimation policy. Merely answering the question of whether a single injunction could provide class-wide relief would require individualized, plan-by-plan determinations, because this case is, at its heart, a contract dispute. Probing behind the pleadings before deciding the certification question, as the Court is permitted to do, Comcast, 133 S. Ct. at 1432, the Court is confident that a single injunction could not provide relief to the class. As will be discussed infra, Part IV,

United's estimating policy is not arbitrary and capricious as applied to at least one plan, and thus must be upheld, but the policy likely would be arbitrary and capricious under other plans, which more clearly dictate that United use the Medicare fee schedule as the allowable expense on one side of the calculation. Therefore, the class may not be certified under Rule 23(b)(2). See Wal-Mart, 131 S. Ct. at 2557 ("Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class."); Gates v. Rohm & Haas Co., 655 F.3d 255, 262-63 (3d Cir. 2011) (affirming denial of class certification under Rule 23(b)(2) because a single injunction or declaratory judgment would not provide relief to each class member).

## C. Rule 23(b)(3) requirements

Rule 23(b)(3) permits class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Defendants argue that Plaintiffs fail to show that common issues predominate, largely for the reasons that Defendants argue the claims lack commonality. (Def. Opp'n at 39-40.) As Defendants rightly observe, the standard for predominance is "even more demanding" than Rule 23(a) commonality. Comcast,

32

133 S. Ct. at 1432. Defendants suggest that plan-specific proceedings will be necessary to determine whether the plan documents vest United with discretion, whether the plans can be interpreted to allow United's current practices and whether United is a proper defendant. (Def. Opp'n at 40.) For reasons discussed above, Defendants conclude that no class-wide proof is available to show that putative class members were injured.[17] (Id. at 42-43.)

Defendants next argue that Rule 23(b)(3) establishes a separate burden to Plaintiffs to prove "that damages are capable of measurement on a classwide basis." (Def. Supp. Br. at 8, quoting Comcast, 133 S. Ct. at 1433.) Plaintiffs respond they do not seek monetary damages.

---

[17]  Defendants also argue that under a "come out whole" plan, some class members might not have been injured. (Def. Opp'n at 43.) A "come out whole" plan "ensures that the secondary plan pays its full benefits on any portion of the allowed expense not covered by the primary plan." Under a come out whole plan, United would calculate what Medicare would have paid, and subtract that amount from what United would pay as primary. If "United's would-pay is greater than the member responsibility, United's secondary benefit equals the member responsibility. And, in those instances, if the secondary plan has a "bank," United will place the difference between United's would pay and the member responsibility in the bank where it will be available later in the calendar year to offset amounts otherwise owed by the member." (Id.) For an example of how a calculation works, see Def. Opp'n at 12 n.3.

Defendants conclude that "determining whether any individual would be better off if Lipstein were to prevail will require examining -- for each member -- whether United's decision to estimate resulted in a larger "bank" balance and whether the member incurred additional expenses that allowed her to recoup that balance before the end of the year." (Id. at 43-44.)

Plaintiffs combine their commonality and predominance arguments in their motion brief, and, in reply to Defendants, add only that the "issue under Rule 23 is whether a plaintiff's claim 'is most efficiently determined on a class-wide basis rather than in [numerous] individual lawsuits.'" (Pl. Reply at 30, quoting McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 672 F.3d 482, 490 (7th Cir. 2012).) Plaintiffs argue that the court is not to assess whether the class action will be difficult to manage but whether it will create "relatively more management problems than any of the alternatives." (Class Cert. Mot. Br. at 30, quoting Klay v. Humana, 382 F.3d 1241, 1273 (11th Cir. 2004), abrogated in part on other grounds, Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639 (2008).)

To the extent Plaintiffs seek injunctive relief under 23(b)(3), the class may not be certified because individual inquiries will overwhelm the proceeding, as discussed at length related to commonality, and because any relief under Rule 23(b)(3) would have to come in the form on individualized orders for alike class members under materially similar plans. See In re Linerboard Antitrust Litig., 305 F.3d 145, 156 (3d Cir. 2002) ("Clearly, if proof of the essential elements of the cause of action require individual treatment, then there cannot be a predominance of 'questions of law and fact common to the members of the class.'"). Certification is improper under Rule

34

23(b)(3).[18]

## IV. MOTION FOR SUMMARY JUDGMENT

### A. Arbitrary and capricious standard

The Court turns to consider the specific determinations made by the administrators of the BMS Plan on the claims submitted by Mr. and Mrs. Lipstein.

In an ERISA case, where "the administrator has discretionary authority to determine eligibility for benefits, . . . the decision must be reviewed under an arbitrary and capricious standard." Doroshow v. Hartford Life & Accident Ins. Co., 574 F.3d 230, 233 (3d Cir. 2009). If the administrator has discretion to interpret the plan terms, and the terms of the plan are ambiguous, "courts 'must defer to this interpretation unless it is arbitrary and capricious.'" Fleisher v. Standard Ins. Co., 679 F.3d 116, 121 (3d Cir. 2012) (quoting McElroy v. SmithKline Beecham Health & Welfare Benefits Trust Plan, 340 F.3d 139, 143 (3d Cir. 2003)).

Under the arbitrary and capricious standard, the court is "bound to affirm [the administrator's] decision if it was not contrary to the Plan's terms and was rationally related to a legitimate Plan purpose." Foley v. Int'l Bhd. of Elec. Workers

---

[18] Defendants advance the argument that they are not a proper defendant here. Because the Court finds that Plaintiffs fail to establish the prerequisites for class certification under Rule 23(a) & (b), the Court need not consider Defendants' argument further.

Local Union 98 Pension Fund, 271 F.3d 551, 555 (3d Cir. 2001). An administrator's decision is arbitrary and capricious "if it is without reason, unsupported by substantial evidence or erroneous as a matter of law." Fleisher, 679 F.3d at 121. In determining "whether an administrator's interpretation of a plan is reasonable," the Third Circuit instructs that district courts consider the following factors:

> (1) whether the interpretation is consistent with the goals of the Plan; (2) whether it renders any language in the Plan meaningless or internally inconsistent; (3) whether it conflicts with the substantive or procedural requirements of the ERISA statute; (4) whether the [relevant entities have] interpreted the provision at issue consistently; and (5) whether the interpretation is contrary to the clear language of the Plan.

Howley v. Mellon Fin. Corp., 625 F.3d 788, 795 (3d Cir. 2010).

Under ERISA, a plaintiff's right to benefits "can only be found if it is established by the terms of the ERISA-governed employee benefit plan." In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig., 58 F.3d 896, 902 (3d Cir. 1995); 29 U.S.C. § 1104(a)(1)(D) (requiring fiduciaries to discharge their duties "in accordance with the documents and instruments governing the plan" to the extent those documents and instruments are consistent with ERISA). The "written terms of the plan documents control . . . ." In re Unisys Corp., 58 F.3d at 902.

## B. Whether the Plan's language is ambiguous and contrary to Defendants' estimation methodology

Here, Plaintiffs concede that United "has the discretion to

36

interpret the plan terms"[19] (Pl. Opp'n at 11), and that United
may estimate what Medicare would have paid for Lipstein's
treatment. (Class Cert. Reply at 19 n.9). Defendants' main
argument is that the 2007 SPD is silent as to "how United is to
estimate Medicare's payment and coordinate that estimate with the
BMS Plan's benefits." (Mot. Summ. J. at 27) (emphasis in
original). Defendants acknowledge that Plaintiffs' preferred
calculation is acceptable under the SPD, but Defendants argue
that Plaintiffs' methodology is not compelled by the Plan
documents and maintain that their interpretation is a permissible
reading, too. (Id. at 25-26, 30-31.) According to Defendants,
making an estimate of what Medicare would have paid logically
entails using the percentage of what Medicare would cover for a
given service, but it does not necessarily involve using the
Medicare fee schedule. (Def. Reply [Docket Item 112] at 7-8.)
This is especially true, Defendants add, given that providers who
do not accept Medicare do not always code their bills with the
Medicare coding, a wrinkle that increases the administrative
burden of determining the proper allowed expense on the fee
schedule. (Mot. for Summ. J. at 33-34.)

---

[19] The Administrative Services Agreement between the BMS Plan
and United provides that, consistent with the Plan's provisions,
United enjoys discretion and authority to develop and use
"procedures, standards, and practices that [United] develop[s]
for benefit claim determination." (Decl. of Catalano, Ex. 1
[Docket Item 94-7] at 11, § 14.1(b)(ii).)

Plaintiffs argue succinctly that the Plan

> does not allow United simply to "pick a number" when
> making its estimate. That estimate must be based on a
> reasonable interpretation of Medicare "would have paid."
> Since Medicare bases its benefits on its publicly
> available fee schedule as the allowed expense, <u>not</u> billed
> charges, United fails to demonstrate how it is in any way
> reasonable to use billed charges for purposes of
> "estimating" Medicare benefits.

(Pl. Opp'n at 13-14.)

Plaintiff's reading of the text -- that the Plan requires an estimate of what Medicare would pay, and that estimate should be made by looking to the fee schedule that Medicare uses -- is a reasonable, perhaps the most natural, interpretation, but it is not the only permissible reading. The only guidance the 2007 SPD provides about that estimation is the statement that "an estimate of Medicare payments will be made . . . ." (<u>Id.</u> at 32.) Nowhere does the SPD describe how the methodology to be employed, how accurate those estimates must be, or whether, if Defendants used the Medicare fee schedule for the estimation, Defendants would have to use a different allowable expense for the BMS Plan side of the calculation.[20] The SPD does not expressly prohibit

---

[20] When a BMS Plan participant or beneficiary is treated by a Medicare provider, and Medicare actually makes a payment, United uses the Medicare fee schedule as the allowed expense on the BMS side of the calculation, not a different, higher allowed expense. (Mot. for Summ. J. Ex A.) That calculation is compelled by federal law, which generally prohibits a provider from seeking reimbursement beyond the Medicare allowed amount. (Mot. for Summ. J. at 8, citing 42 C.F.R. § 424.55.) In the case of a provider who does not accept Medicare, however, no similar law exists to cap the amount of reimbursement for the provider. If Defendants

Defendants' methodology. The language of the plan simply does not answer the question of how to estimate Medicare payments or whether what Medicare "would have paid" means a dollar amount or percentage of costs. The Plan is ambiguous on this point, because it is subject to reasonable alternative interpretations. See Fleisher, 679 F.3d at 121 (quoting Taylor v. Cont'l Grp. Change in Control Severance Pay Plan, 933 F.2d 1227, 1233 (3d Cir. 1991)).

The Court also notes that the SPD uses the word "estimate," which means "the act of appraising or valuing," or "a rough or approximate calculation." Merriam-Webster Dictionary Online, http://www.merriam-webster.com/dictionary/estimate (last visited on Sept. 9, 2013). An estimate is "an approximate calculation or judgment of the value . . . ." Oxford Dictionaries Pro, http://english.oxforddictionaries.com/definition/estimate (last visited Sept. 9, 2013). The word suggests a tentative or rough assessment of value, and does not demand that Defendants replicate with precision Medicare's own calculation or seek a determination from Medicare about what it would pay in a given instance. Here, United's calculation produced a result within $24 of the amount Plaintiffs suggest Medicare would have paid (and in

used the Medicare fee schedule as the allowed expense on both sides of the calculation in this case, the payment to the Lipsteins would have been lower than the payment Defendants made or calculated using its Medicare estimation policy. (Mot. for Summ. J. Ex. A.)

reality, United's actual payment to the Lipsteins for each session was only $9.58 less than what the Lipsteins argue they are owed). Defendants have estimated -- that is, roughly determined or approximated -- what Medicare would have paid in this case, and this motion for summary judgment concerns only these specific Lipsteins' claims.

Plaintiffs fault Defendants for "fail[ing] to city <u>any</u> provision in the BMS Plan that allows for the use of billed charges as the allowed expense under either that Plan or Medicare." (Pl. Opp'n at 13) (emphasis in original). However, this misunderstands the Defendants' burden and their argument. Defendants' contention is that the SPD is silent on methodology and their policy is reasonable. To prevail on summary judgment, Defendants need not point to a provision of the SPD expressly articulating their calculation method; they merely need to show that the language is ambiguous and that their interpretation is not arbitrary and capricious. It is Plaintiffs who must point to Plan provisions to show that Defendants' interpretation is contrary to the Plan itself, or otherwise raise a genuine issue of material fact as to the arbitrary and capricious nature of the administrator's decision. In the absence of express, relevant language, the Court concludes that the Plan's language is ambiguous, and Defendants' methodology is not contrary to the clear language of the Plan.

This conclusion is consistent with a recent opinion from the Southern District of New York concerning a substantially similar, although not identical, case. In Gates v. United Healthcare Ins. Co., No. 11-3487, 2013 WL 1718914, at *9 (S.D.N.Y. Apr. 19, 2013), the private plan at issue provided that, in the case of participants or beneficiaries receiving treatment from providers who had opted out of Medicare, "Medicare benefits are determined as if the full amount that would have been payable under Medicare was actually paid under Medicare." The district court ruled that the plan's "language leaves open the question of what 'amount' would have been payable and how that amount is calculated." Id. Although plaintiff Gates argued, as Plaintiffs do here, that the defendants should have used the Medicare fee schedule to determine the allowed expense, the court disagreed, noting that

> it is often not possible to map the services billed by an opt-out / non-Medicare provider to the codes in the Medicare fee schedule. Providers outside the Medicare system often submit billing entries that do not align. As such, requiring the Plan to use the Medicare fee schedule as the "amount payable" under Medicare involves an estimation, just as using the amount actually billed involves an estimation. The amount that "would have been payable" is thus ambiguous based on plain language of the plan -- and the administrator may interpret the meaning of the term.

Id.[21] While the language of the BMS Plan is different from the

_____

[21] The plaintiff's motion for reconsideration was denied in Gates. See Order, Gates v. UnitedHealth Group, Inc., No. 11-3487 (S.D.N.Y. entered May 15, 2013), ECF No. 108. An appeal of the court's decision granting summary judgment has been docketed with the Second Circuit. See Gates v. UnitedHeath Group, Inc., No. 13-

plan in <u>Gates</u>, the two plans are similar enough for present purposes to reach the same conclusion for substantially similar reasons. If anything, the language in the BMS Plan is even more ambiguous than the plan language in <u>Gates</u>. United's methodology is not contrary to the Plan's ambiguous language.

### C. Whether United's calculation methodology is arbitrary and capricious

Whether the Defendants' interpretation is contrary to the clear language of the Plan is only one of the factors the Court must consider in making an arbitrary and capricious determination. <u>See</u> <u>Howley</u>, 625 F.3d at 795 (articulating the factors).

Defendants make several arguments to defend their interpretation. As discussed, Defendants argue that using the actual billed charge as the allowable expense facilitates efficient administration of claims, because a claim from an opt-out provider "often lack[s] the necessary procedure coding detail to determine what Medicare would have paid based on its published

---

2114 (2d Cir. docketed May 24, 2013).

    Plaintiffs urge the Court to disregard <u>Gates</u> because the decision "clearly applied an incorrect standard of review to United's conduct. United is obligated to reasonably interpret plan terms, not merely disregard them whenever it has a 'rational basis' to do so." (Pl. Supp. Br. at 6.) To the contrary, under an arbitrary and capricious standard of review, the Court must affirm the administrator's decision if it is rationally related to a legitimate plan purpose. <u>Foley</u>, 271 F.3d at 555. Defendants argue that while the plan language in <u>Gates</u> differed from the BMS Plan, "the core analysis . . . fully applies to Lipstein's claim." (Def. Supp. Br. at 10.) The Court agrees with Defendants.

fee or payment schedules." (Smith Decl. [Docket Item 94] ¶ 10[22]; Mot. for Summ. J. at 10); see also Gates, 2013 WL 1718914, at *9. "Even when United can determine the Medicare fee or payment schedule amount, it does not know how Medicare would apply its reimbursement policies to the claim, as it lacks a Medicare explanation of benefits form." (Smith Decl. ¶ 10.)

Defendants assert that their policy is consistent with the National Association of Insurance Commissioners ("NAIC") Coordination of Benefits Model Regulation § 3(A)(5)(d), which provides that where two plans use different methods to determine the allowable expense, the administrator should use the primary plan's allowable expense for both sides of the calculation. (Mot. for Summ. J. at 7.) Although in this case Defendants did not use the primary plan's payment arrangement to be the allowable expense for both plans (Medicare was the primary insurer), Defendants' policy is consistent with the regulation in that Defendants use the same number for the allowed expense on both sides of the calculation, something the Plaintiffs' calculation does not.[23] In fact, Defendants' decision to use the billed

---

[22] The declarant, Melody L. Smith, is a manager in the operations management section of United's Business Solutions Services. (Smith Decl. ¶ 3.)

[23] The policy also is consistent with the Plan language, which calls for calculating what Defendants would have paid if the BMS Plan had been primary. That is achieved by using the billed charge, accepted as reasonable and customary, as the allowed expense.

charge rather than the Medicare fee schedule on both sides of the equation would result in higher payments to insureds if United were permitted to use the same allowable expense for both calculations. Had Defendants used the Medicare fee schedule on both sides of the calculation in this case, the payment to the Lipsteins would have been $21.62, almost $11 less than the $32.50 determined by Defendants' actual policy. (Id. Ex A.)

Defendants explain that their methodology ensures that the Plan "mimic[s] the calculation of benefits that occurs when the members enroll in Medicare and obtain services from participating Medicare providers." (Mot. for Summ. J. at 32-33; Mary Ann Czarcinski Dep. 52:18-53:3.) When a Medicare payment is made, there is no estimate to be made and Defendants use the Medicare fee schedule as the allowable expense on both sides of the equation. (Def. Ex. A.) The difference that United pays as a secondary insurer, if any, results from the difference in the percentage of the allowable expense that United covers, compared with the percentage of the allowable expense paid by Medicare. Defendants' calculation when no Medicare payment is made sets up a similar calculation, starting with the same allowable expense on both sides of the equation. The difference owed by United results from the difference in percentage of what United covers compared with the percentage of the expense that Medicare pays. Here, Defendant has chosen to start with the billed charge for

44

both calculations. Plaintiffs object, rearguing that the terms of the plan do not expressly permit Defendants to calculate the benefits as they do. (Pl. Opp'n at 15-17.) Plaintiffs contend that Defendants must use two different numbers for the allowed expense in its calculation.

The Court finds that Defendants' calculation of the Lipsteins' benefits is a reasonable implementation of ambiguous plan language. The administrative benefit of Defendants' calculation is at least a rational basis for choosing the policy. The Medicare estimation policy is set in writing, leading to consistent interpretations of the SPD. The calculation does not conflict with ERISA or render language of the Plan meaningless. The formula is a reasonable interpretation of the Plan documents, in furtherance of the Plan's goals.

Plaintiffs object that Defendants' methodology too often results in no payment by United. (Pl. Opp'n at 7.) Indeed, whenever both Medicare and the BMS Plan cover the same percentage of the allowed expense, Defendants' calculation results in no payment. However, this would also be true had the insured seen a Medicare provider, so it is not an irrational outcome. Likewise, if Defendants followed the NAIC guidelines by using the primary plan's allowed expense for both sides of the calculation, Defendants would only pay as a secondary plan if the percentage covered exceeded the percentage covered by Medicare. That the

percentages align does not entitle Plaintiffs to additional money when the patient sees a provider who does not accept Medicare. Such an objection does not render Defendants' calculation arbitrary.

The key question is how to estimate what Medicare would have paid. Defendants argue that it is reasonable to apply the percentage Medicare would have paid to an easily ascertainable number, the billed charge. If Defendants were to try to use the Medicare fee schedule, as Plaintiffs urge, it would not always be obvious how to apply the fee schedule to a particular claim. For the reasons explained above, Defendants were entitled to estimate what Medicare would have paid in an administratively efficient manner, given that the SPD's silence on the matter. Accordingly, the Court grants Defendants' motion for summary judgment as to Plaintiffs' Count II for relief under § 1132(a)(1)(B).[24]

---

[24] Plaintiffs clarified at oral argument that they still seek relief under Count I, even though they no longer challenge United's right to estimate Medicare payments. However, both Counts I & II are brought under the same ERISA provision and both assert identical complaints that United's method of estimation is improper. When ignoring the language in Count I that refers to United's right to estimate, per Plaintiffs' concession, Count I is indistinguishable from Count II. Plaintiffs have offered no explanation of what Count I adds. Therefore, to the extent Count II fails as a matter of law, so does Count I.

**D. Whether Count III is duplicative of Count II**

Defendants argue that Count III, the fiduciary duty claim, fails because it duplicates the Count II benefits claim. (Mot. for Summ. J. at 38.) In a previous opinion in this case, Judge Hochberg noted a split in authority and disagreement within this Circuit on the effect of <u>Varity Corp. v. Howe</u>, 516 U.S. 489, 512 (1996), which concluded that § 502(a)(3), codified as § 1132(a)(3),

> authorizes appropriate equitable relief. We should expect
> that courts, in fashioning appropriate equitable relief,
> will keep in mind the special nature and purpose of
> employee benefit plans and will respect the policy
> choices reflected in the inclusion of certain remedies
> and the exclusion of others . . . . Thus, we should
> expect that where Congress elsewhere provided adequate
> relief for a beneficiary's injury, there will likely be
> no need for further equitable relief, in which case such
> relief normally would not be appropriate.

<u>Lipstein v. United Healthcare Ins. Co.</u>, No. 11-1185, 2011 WL 5881925, at *2 (D.N.J. Nov. 22, 2011) (quoting <u>Varity</u>, 516 U.S. at 515). Judge Hochberg declined to dismiss Count III "at the motion to dismiss stage," but added "the Court will not permit a § 502(a)(3) claim to duplicate the relief theories of § 502(a)(1)(B) at the appropriate stage of this litigation." <u>Id.</u> at *3 (citing <u>Zebowski v. Evonik Degussa Corp. Admin. Comm.</u>, No. 10-542, 2011 WL 767444, at *3 (E.D. Pa. Feb. 24, 2011), <u>DeVito v. Aetna, Inc.</u>, 536 F. Supp. 2d 523, 533-34 (D.N.J. 2008), and <u>Parente v. Bell Atl.-Pa.</u>, No. 99-5478, 2000 WL 419981, at *3 (E.D. Pa. Apr. 18, 2000)).

Plaintiffs' Amended Complaint makes clear that the allegedly wrongful conduct at issue in Count III is the same as in Count II. Plaintiffs simply make the added allegations that "United violated the fiduciary obligations it owed to Plaintiff" and that, as a result of the breach of fiduciary duties, United has been "unjustly enriched, either by retaining benefits that it owed to Plaintiff and other members of the Class or by obtaining enhanced administrative fees from clients who were not required to pay the additional benefits." (Am. Compl. ¶¶ 77-78.)

In defense of Count III, Plaintiffs argue that the "remedies for breach of fiduciary duty are different from those available for an award of benefits, including removal." (Pl. Opp'n at 24.) Plaintiffs conclude that United's actions were arbitrary and capricious and "[s]ince there are available remedies to Mr. Lipstein for United's breach of fiduciary duty which are in addition to the ERISA claim for benefits, Count III's breach of fiduciary duty claims should not be dismissed." (Id.)

In reply, Defendants state that, although the remedies are potentially different, "[t]his, of course, is always true, but it does not permit § 502(a)(3) claims whose aim is to recover the same relief that the plaintiff demands under § 502(a)(1)(B)." (Def. Reply at 15.)

The Court agrees with Defendants that Plaintiffs have not distinguished the gravamen of their claim in Count III from that

in Count II, and it is Plaintiffs' burden to do so in opposition
to a motion for summary judgment. Although Plaintiffs highlight
additional remedies available under subsection (a)(3), Plaintiffs
request relief merely duplicative of that sought under subsection
(a)(1)(B):

> Plaintiff . . . seek appropriate declaratory and
> injunctive relief to remedy the harm caused by United's
> misconduct, including but not limited to, requiring
> United to recalculate the benefits based on a proper
> interpretation of Plan terms, as described herein, and
> payment in restitution to Plaintiff and the other Plan
> members of an amount necessary to make them whole for
> the reduced benefits they received. Plaintiff further
> requests attorneys' fees, costs, prejudgment interest
> and other appropriate relief against United.

(Am. Compl. ¶ 79.) Plaintiffs have not requested any relief in
Count III that would not be available under § 1132(a)(1)(B).
Plaintiffs may not seek identical relief under subsection (a)(3)
merely to avoid the legal framework of subsection (a)(1)(B). See
Korotynska v. Metro. Life Ins. Co., 474 F.3d 101, 107 (4th Cir.
2006) (concluding that plaintiffs may not bring actions under §
1132(a)(3), when such claims seek relief afforded under §
1132(a)(1)(B), merely to "circumvent[] § 1132(a)(1)(B)'s standard
of review of abuse of discretion" and that to hold otherwise
"would encourage parties to avoid the implications of section
502(a)(1)(B) by artful pleading"). It is Plaintiffs' burden to
show that Count III is not merely duplicative of Count II and
they have failed to make a persuasive argument or provide

sufficient proof. Summary judgment will be granted.[25]

**E. Conclusion**

Planitiffs' proposed class suffers from a lack of commonality and predominance. The class also fails to show that common questions predominate or that a single injunction or declaratory judgment could provide class-wide relief. Therefore, the motion to certify a class is denied. As to the Lipsteins' claims, the Court holds that the language of the BMS Plan is ambiguous as to how to estimate Medicare payments, and United's interpretation is neither contrary to the language of the Plan nor arbitrary and capricious. Given United's discretion to interpret the Plan's terms, United's estimation policy therefore must be upheld as applied to the Lipsteins' claims. Defendants are entitled to summary judgment. An accompanying Order will be entered.


**September 26, 2013**                   **s/ Jerome B. Simandle**
Date                                     Jerome B. Simandle
                                         Chief U.S. District Judge



---

[25] Because all counts have been dismissed, the Court need not address Defendants' argument in the alternative that it is not a proper defendant in this case. Nor must the argument be reached for Plaintiffs' benefit, as Plaintiffs argue that United is the proper Defendant.